1  TANCRED SCHIAVONI
       (*pro hac vice application to be filed*)
2  STEPHEN H. WARREN (S.B. #136895)
   KAREN RINEHART (S.B. 185996)
3  O'MELVENY & MYERS LLP
   400 South Hope Street
4  Los Angeles, California 90071
   Telephone: (213) 430-6000
5  Facsimile: (213) 430-6407
   Email: tschiavoni@omm.com
6          swarren@omm.com
           krinehart@omm.com
7
   *Counsel for Century Indemnity Company,*
8  *as successor to CCI Insurance Company, as*
   *successor to Insurance Company of North*
9  *America*

10              **UNITED STATES DISTRICT COURT**

11             **SOUTHERN DISTRICT OF CALIFORNIA**

12

13  Century Indemnity Company,          Case No. **'21 CV 2011 L    MDD**

14                  Plaintiff,          **DISCOVERY MATTER**

15          v.                          **CENTURY'S MEMORANDUM OF LAW
                                        IN SUPPORT OF CENTURY'S**
16  Andrew Van Arsdale,                 **MOTION TO COMPEL ANDREW VAN
                                        ARSDALE TO COMPLY WITH**
17                  Defendant.          **CENTURY'S SUBPOENAS TO
                                        TESTIFY AT A DEPOSITION AND**
18                                      **PRODUCE RESPONSIVE
                                        DOCUMENTS**
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................... III

ARGUMENT ........................................................................................................................ 1

I     THE SUBPOENAS CONCERN RELEVANT, FACTUAL INFORMATION............................ 1

II    MR. VAN ARSDALE CANNOT INVOKE THE ATTORNEY-CLIENT PRIVILEGE OVER THE PURELY FACTUAL INFORMATION SOUGHT BY CENTURY ...................... 6

     A.   Mr. Van Arsdale fails to carry his burden to invoke the attorney-client privilege ......................................................................................... 6

     B.   Mr. Van Arsdale served primarily as owner and principal of Reciprocity, a for-profit claims-aggregation business, not a law firm.............................................................................................................. 11

     C.   Mr. Van Arsdale's status as an attorney does not *per se* exempt him from testifying in a case......................................................................... 13

III   EVEN IF THE ATTORNEY-CLIENT PRIVILEGE DID APPLY, MR. VAN ARSDALE EITHER WAIVED THE PRIVILEGE OR FAILED TO PROPERLY INVOKE IT. .................. 16

     A.   Mr. Van Arsdale waived privilege when AIS publicly disputed that Mr. Kosnoff speaks for their claimants. ................................................ 16

     B.   Blanket claims of privilege are ineffective, especially where Century seeks purely factual information.................................................. 17

     C.   Mr. Van Arsdale failed to provide a privilege log................................. 19

IV    THE WORK PRODUCT DOCTRINE DOES NOT APPLY HERE. ................................ 19

V     THE SUBPOENAS ARE NOT UNDULY BURDENSOME. ........................................... 20

CONCLUSION ..................................................................................................................... 22

**Cases**

*Admiral Ins. Co. v. U.S. Dist. Court for Dist. Of Arizona*, 881 F.2d 1486, 1493 (9th Cir. 1989).................................................................................................12

*Amicus Communications, L.P. v. Hewlett-Packard Co.*, No. 99 Civ. 0284 WL 33117227 (D.D.C. Dec. 3, 1999)....................................................................13

*Baron & Budd, P.C. v. Unsecured Asbestos Claimants*, 321 B.R. 147 (D.N.J. 2005)...........................................................................................14, 15

*Bogan v. Northwestern Mutual Life Ins. Co.*, 152 F.R.D. 9 (S.D.N.Y. 1993)............................13

*Cash-N-Advance v. Dansereau*, 64 Fed. Appx. 417 (5th Cir. 2003) ............................................4

*Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, No. 18CV4437JGKBCM, 2020 WL 757840 (S.D.N.Y. Feb. 14, 2020)……………………………………………..12

*Chase Manhattan Bank, N.A. v. T & NPLC*, 156 F.R.D. 82 (S.D.N.Y. 1994) ..........................13

*Chase-Morris v. Tubby*, No. 65927/2019, 2020 WL 4516920 (N.Y. Sup. Ct. Aug. 3, 2020)..........................................................................................21

*Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir. 1992)................................................15

*Clarke v. Am. Com. Nat'l Bank*, 974 F.2d 127 (9th Cir. 1992)....................................................8

*Conoco Inc. v. U.S. Dep't of Justice*, 687 F.2d 724 (3d Cir. 1982).........................................19

*Davis v. Fendler*, 650 F.2d 1154 (9th Cir. 1981)........................................................................8

*Dole v. Milonas*, 889 F.2d 885 (9th Cir. 1989).......................................................................18

*Everyday Discount, Inc. v. State Farm Gen. Ins. Co.*, 2018 WL 11346535 (C.D. Cal. Oct. 30, 2018)............................................................................8

*Everyday Discount, Inc.*, 2018 WL 11346535 (C.D. Cal. Oct. 30, 2018)...................................8

*FDIC v. Garner*, 126 F.3d 1138 (9th Cir. 1997)......................................................................17

*Friction Div. Prod., Inc. v. E.I. Du Pont De Nemours & Co.*, 117 F.R.D. 535 (D. Del. 1987) ............................................................................6

*Grassmueck v. Ogden Murphy Wallace, P.L.L.C.*, 213 F.R.D. 567 (W.D. Wash. 2003)...................................................................................9

*Hannon v. Countrywide Home Loans, Inc. (In re Hannon)*, 421 B.R. 728 (Bankr. M.D. Pa. 2009)..................................................................4

*Hearn v. Rhay*, 68 F.R.D. 574 (E.D.Wash. 1975)...........................................................................16

*Hickman v. Taylor*, 329 U.S. 495 (1947)........................................................................................19

*Home Indem. Co. v. Lane Powell Moss and Miller*, 43 F.3d 1322 (9th Cir. 1995)....................16

*In re Combustion Engineering*, 391 F.3d 190 (3d Cir. 2004) ........................................................2

*In re Commonwealth Financial Corp.*, 408 F.2d 640 (3d Cir. 1969) .........................................17

*In re Crippin*, 877 F.2d 594, 598 (7th Cir. 1989)...........................................................................3

*In re Disciplinary Proceeding Against McGrath*, 178 Wash. 2d 280 (2013).............................4

*In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234 (E.D. Pa. 2014)................................20

*In re Gawker Media LLC*, No. 16-11700 (SMB), 2017 WL 2804870 (Bankr.
   S.D.N.Y. June 28, 2017) ...........................................................................................................6

*In re Global Indus. Techs., Inc.*, 645 F.3d 201 (3d Cir. 2011)......................................................3

*In re Grand Jury Investigation*, 974 F.2d 1068 (9th Cir. 1992).................................................18

*In re Grand Jury Matters*, 751 F.2d 13 (1st Cir. 1984)...............................................................17

*In re Grand Jury Proceedings*, 689 F.2d 1351 (11th Cir. 1982)..................................................7

*In re Grand Jury*, 705 F.3d 133 (3d Cir. 2012)............................................................................8

*In re Michaelson*, 511 F.2d 882 (9th Cir. 1975) .........................................................................12

*In re Powerhouse Licensing, LLC*, 441 F.3d 467 (6th Cir. 2006) ...............................................6

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 352 F. Supp.
   3d 207 (E.D.N.Y. 2019)............................................................................................................8

*In re SPM Mfg. Corp.*, 984 F.2d 1305 (1st Cir. 1993).................................................................3

*In re Taylor*, 407 B.R. 618 (Bankr. E.D. Pa. 2009).....................................................................5

*In re Thomas*, 337 B.R. 879 (Bankr. S.D. Tex. 2006).................................................................4

*In re Thomas*, 337 B.R. 879 (Bankr. S.D. Tex. 2006), *aff'd*, 223 Fed. Appx. 310
   (5th Cir.2007)............................................................................................................................4

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142 (D.D.C.
   2012)...........................................................................................................................................8

*Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)......................................................19

iv

*Kleeberg v. Eber*, 2019 WL 2085412 (S.D.N.Y. May 13, 2019)………………………………..12

*Knox v. Sunstar Acceptance Corp. (In re Knox)*, 237 B.R. 687 (Bankr. N.D. Ill. 1999)..................................................................................................................4

*Lopez v. CIT Bank, N.A.*, 2015 WL 10374104 (N.D. Cal. Dec. 18, 2015)................................ 21

*Matter of Fischel*, 557 F.2d 209 (9th Cir. 1977)....................................................... 11

*Mitchell Eng'g v. City & County of San Francisco*, 2010 U.S. Dist. LEXIS 53958 (N.D. Cal. May 6, 2010)....................................................................................7

*Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005) ...................................... 20

*Nakash v. United States Dept. of Justice*, 128 F.R.D. 32 (S.D.N.Y. 1989).............................. 13

*Nat'l Life Ins. Co. v. Hartford Acc. & Indem. Co.*, 615 F.2d 595 (3d Cir. 1980) ............ 17

*Natural-Immunogenics Corp. v. Newport Trial Grp.*, 2018 WL 6137633 (C.D. Cal. Apr. 23, 2018) ..................................................................................................18

No. 10-10494 (SHL), 2011 WL 6336153 (Bankr. S.D.N.Y. Dec. 19, 2011).............................. 4

No. 10-70606, 2013 WL 2450925 (Bankr. S.D. Tex. June 5, 2013) ......................................... 6

*Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726 (8th Cir. 2002) ...................................... 12

*Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540 (10th Cir. 1984)................................. 8

*Rambus Inc. v. Samsung Electronics Co.*, 2007 WL 3444376 (N.D. Cal. Nov. 13, 2007)........................................................................................................................16

*Robocast, Inc. v. Microsoft Corp.*, 2013 WL 1498666 (D. Del. 2013) .................................... 17

*Sadowski v. Gudmundsson*, 206 F.R.D. 25 (D.D.C. 2002) ..................................................... 13

*SEC v. Art Intellect, Inc.*, 2012 WL 776244 (D. Utah Mar. 7, 2012) .................................... 12

*Shelton v. Amer. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986)................................................. 13

*Sommer v. U.S.*, 2012 WL 28337 (S.D. Cal. Jan. 5, 2012) ....................................................... 16

*Sorenson v. Riffo*, 2008 WL 2465454 (D. Utah Jun. 16, 2008)................................................7

*Swanson v. Trasino Park-Hudsons, LLC (In re Vission, Inc.)*, No. 07-21957, 2008 WL 2230741 (Bankr. E.D. Wis. 2008)....................................................................... 6

*Swenson v. Geico Cas. Co.*, 336 F.R.D. 206 (D. Nev. 2020)..................................................21

v

*U.S. v. Furst*, 886 F.2d 558 (3d Cir. 1989)............................................................................8

*U.S. v. Graf*, 610 F.3d 1148 (9th Cir. 2010)........................................................................8

*U.S. v. Ruehle*, 583 F.3d 600 (9th Cir. 2009)..........................................................9, 10, 17

*U.S. v. Sanmina Corp.*, 968 F.3d 1107 (9th Cir. 2020)......................................................18, 20

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245 (D. Kan. 1995).........................................................................................................................7

*United Phosphorus, Ltd.*, 164 F.R.D. 245 (D. Kan. 1995)..........................................7, 12, 13

*United States v. Connery*, 867 F.2d 929 (6th Cir. 1989)......................................................4

*United States v. Nobles*, 422 U.S. 225 (1975)....................................................................19

*Upjohn Co. v. United States*, 449 U.S. 383 (1981)..............................................................7

*Walker v. County of Contra Costa*, 227 F.R.D. 529 (N.D. Cal. 2005)................................16

*Wal-Mart Stores, Inc. v. City of Pontiac Gen. Emps.' Ret. Sys.*, 314 F.R.D. 138 (D Del. 2016).................................................................................................................18

*Younger Mfg. Co. v. Kaenon, Inc.*, 247 F.R.D. 586 (C.D. Cal. 2007)................................13

**Statutes**

11 U.S.C. § 1126(a)...........................................................................................................2, 3

18 U.S.C. §§ 152(4)..............................................................................................................4

**Rules**

Fed. R. Bankr. P. 7026.........................................................................................................1

Fed. R. Bankr. P. 9011(b)....................................................................................................4

Fed. R. Bankr. P. 9014.........................................................................................................1

Fed. R. Bankr. Proc. 9016..................................................................................................18

Fed. R. Civ. P. 26(b)(5).......................................................................................................8

Fed. R. Civ. P. 45(e)(2)......................................................................................................18

Model R. Prof. Conduct 3.3, cmt. 3 (ABA 2011)..................................................................4

MEMORANDUM OF LAW IN SUPPORT OF
CENTURY'S MOTION TO COMPEL 3RD
PARTY SUBPOENA

1.      Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century"), respectfully submits the following memorandum of law in support of its motion to compel Andrew Van Arsdale to comply with Century's subpoena to testify at a deposition and subpoena to produce documents (the "Subpoenas"), both issued by Century on October 4, 2021. The Subpoenas relate to the chapter 11 proceedings, No. 1:20-bk-10343, pending in the Bankruptcy Court for the United States District Court for the District of Delaware (the "Delaware Court") (the "Underlying Action"). Movant is a party in the Underlying Action. This Court has jurisdiction over this matter pursuant to Federal Rule of Civil Procedure 45(c) as the Subpoena required compliance in this District. For avoidance of redundancy, Century incorporates by references the preliminary statement and background sections of its motion to transfer, filed concurrently with the Motion.

## ARGUMENT

**I    THE SUBPOENAS CONCERN RELEVANT, FACTUAL INFORMATION**

2.      Under Rule 26(b), "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."[1] The material Century seeks is relevant to investigating the claims explosion that overwhelmed BSA post-petition, which is inextricably tied to a core issue in the BSA Bankruptcy: voting. In permitting discovery against aggregators, the Delaware Court observed:

> I think the ***evidence that was submitted raises concerns about how some of these claims were generated*** and the recent declaration where Mr. Kosnoff adds to that concern. So, at this time, I'm going to permit that discovery. I think that the discovery could be relevant to voting and I think we need to get that underway, regardless of the plan that's in front of me.[2]

---

[1]   The Fed. R. Civ. P. apply to these bankruptcy proceedings. Fed. R. Bankr. P. 7026, 9014.
[2]   Cocchiaro Decl., Ex. 2, (Del. Bankr. 20-10343, Aug. 30, 2021 Hr'g Tr.), at 46:11–21 (emphasis added).

Mr. Van Arsdale's central role in fueling the explosion of claims in the BSA Bankruptcy implicates the plan and is necessary to develop several of Century's Plan objections.

3. ***First***, the claims explosion that overwhelmed BSA post-petition—which the evidence indicates Mr. Van Arsdale played a key role in—raises questions about manipulation of the voting process. Under Section 1129(a)(10) of the Bankruptcy Code, the Court has a "monitoring function" that requires confirming that at least one class of impaired claims accepts the plan.[3] In *Combustion Engineering*, the court was concerned that "stub" claimants—who had received a payout for a majority of the value of their claims pre-petition through a settlement, and thus were "only slightly impaired"—not only got to vote on the plan, but represented voting majority.[4] That is analogous to ginned up claimants voting on a plan here, who are similarly unimpaired (and perhaps even nonexistent). Such manipulation of the voting process is precisely what concerned the Third Circuit.[5] Here, investigating illegitimate or non-existent claims—controlled by attorneys through master ballots—is necessary to ensure the integrity of the voting process, and the Plan's compliance with Section 1129(a)(10). Moreover, given the contradictory statements about who represents the interests of some ***17,000 claimants***—Mr. Kosnoff, Mr. Van Arsdale, Eisenberg Rothweiler, the Coalition, or some combination—and the fact that they have taken opposing positions concerning the proposed plan or reorganization, this discovery is imperative. Without it, these parties will continue to claim they speak for the interests of thousands of claimants, and it will be impossible to determine if the plan vote is legitimate and if all votes should count.[6] This discovery thus squarely serves the Court's "monitoring function."[7]

4. ***Second***, that the proposed plan offers a $3,500 expedited distribution to any claimant, without any "additional information to the Settlement Trust" runs afoul of the good

---

[3] *See In re Combustion Engineering*, 391 F.3d 190, 244–47 (3d Cir. 2004).
[4] *Id.* at 244.
[5] *Id.*
[6] *See* 11 U.S.C. § 1126(a) (holders of claims may vote to accept or reject a plan); *see also* Cocchiaro Decl., Ex. 23, (Del. Bankr. 20-10343, Oct. 8, 2021 Scheduling Order, D.I. 6528), ¶ 7 (exempting voting issues from discovery deadlines).
[7] *See In re Combustion Engineering*, 391 F.3d 190, 244–47 (3d Cir. 2004).

faith requirement in Bankruptcy Code Section 1129.[8]  On its face, vote buying reflects a lack of good faith, as does paying invalid (or non-existent) claims.  This particularly concerns insurers because the avalanche of post-petition claims increases the "quantum of liability that the insurers would be called to absorb" while impairing insurers' contractual rights.[9]  Among the ways that the Plan impairs insurers' rights is by supposedly empowering the Trustee to abrogate coverage defenses, including the statute of limitations, while shielding Abuse Claims from any form of judicial scrutiny prior to allowance and payment.[10]  Investigating how many claims have been improperly submitted goes to this Plan objection.  Moreover, discovering later that POCs were improperly generated and submitted—or that additional investigation is necessary to determine *who speaks* for these claimants, if they are legitimate—will undermine the vote and lead to an eleventh-hour disruption of any confirmation.[11]

5.     ***Third***, attorneys who signed POCs had a legal responsibility to vet them, making discovery even more appropriate.  When the Coalition asked the Delaware Court to allow attorneys—rather than claimants—to sign the POCs, its counsel stated that "[a]ll claims . . . will be thoroughly vetted."[12]  But the sheer number of attorneys participating in mass signings casts doubt on whether these lawyers kept their promise, let alone (i) complied with the oath they affirmed by signing the POCs or (ii) their obligations under Rule 9011(b), which states that by signing "a petition, pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable

[8]  Cocchiaro Decl., Ex. 33, (Del. Bankr. 20-10343, Sept. 30, 2021 Fifth Amended Plan, Art. III.B.10, D.I. 6443); Cocchiaro Decl., Ex. 34, (Del. Bankr. 20-10343, Sept. 30, 2021 Disclosure Statement for the Fifth Amended Plan, Art. VII, Sec. B.5.a, D.I. 6445).

[9]  *See In re Global Indus. Techs., Inc.*, 645 F.3d 201, 212 (3d Cir. 2011); *see also In re SPM Mfg. Corp.*, 984 F.2d 1305, 1311 (1st Cir. 1993) (bankruptcy courts lack authority to enter orders that "expand the contractual obligations of parties"); *In re Crippin*, 877 F.2d 594, 598 (7th Cir. 1989) ("[B]ankruptcy courts do not have the power to rewrite contracts to allow debtors to continue to perform on more favorable terms.").

[10]  *See* Cocchiaro Decl., Ex. 33, at Ex. A (Trust Distribution Procedures) Art. VIII.E.

[11]  *See* 11 U.S.C. § 1126(a); *see also* Cocchiaro Decl., Ex. 23, ¶ 7 (exempting voting issues from discovery deadlines).

[12]  Cocchiaro Decl., Ex. 35, (Del. Bankr. 20-10343, Oct. 13, 2020 Omnibus Reply of the Coalition of Abused Scouts for Justice, D.I. 1496), ¶ 41.

MEMORANDUM OF LAW IN SUPPORT OF
CENTURY'S MOTION TO COMPEL 3RD
PARTY SUBPOENA

under the circumstances . . . the allegations and other factual contentions have evidentiary support."[13]  They apply to Mr. Van Arsdale, who orchestrated the marketing campaign and serves as principal of Reciprocity, which the evidence shows worked with over a dozen law firms in submitting POCs.

6.      An attorney undertakes a legal responsibility by affirming the oath above the signature line in a POC.  Disregarding that oath exposes the attorney signing the POC to sanctions, disciplinary action, and even criminal penalties.[14]  In addition, as the court stated in *In re Obasi,* "Bankruptcy Rule 9011 has specifically been held to apply to proofs of claim," which mandates a pre-filing "inquiry."[15]  That court further observed that "[c]ompliance with Bankruptcy Rule 9011 is ***particularly important for proofs of claim*** because a properly filed proof of claim constitutes *prima facie* evidence of the validity and amount of the claim," and "[t]he Court must therefore be able to rely on the integrity of the proofs of claim before it."[16]

---

[13]  Fed. R. Bankr. P. 9011(b); *see also* Model R. Prof. Conduct 3.3, cmt. 3 (ABA 2011) ("[A]n assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry.")

[14]  *See e.g.*, *In re Disciplinary Proceeding Against McGrath*, 178 Wash. 2d 280, 294 (2013) (disbarring attorney who filed false proofs of claim in his wife's bankruptcy to make her assets seem more encumbered than they really were so as "to mislead and discourage . . . creditors from making claims against the secured property."); *see also* 18 U.S.C. §§ 152(4), 157; *United States v. Connery*, 867 F.2d 929, 932 (6th Cir. 1989) (attorney who "prepared" a false proof of claim as part of a scheme by which the debtor had an accomplice file a false proof of claim was convicted of aiding and abetting a violation of 18 U.S.C. § 152(4), and was later disbarred); *In re Thomas*, 337 B.R. 879, 886 (Bankr. S.D. Tex. 2006) (concluding that "the proof of claim prepared, signed, and filed by Counsel on behalf of the IRS [was an] intentional false statement[]" because "both the Debtors and Counsel knew that the documents falsely represented the amount that the IRS asserted to be its claim," and referring conduct to the U.S. Attorney).

[15]  No. 10-10494 (SHL), 2011 WL 6336153, at *7 (Bankr. S.D.N.Y. Dec. 19, 2011); *see also Hannon v. Countrywide Home Loans, Inc. (In re Hannon)*, 421 B.R. 728, 731 (Bankr. M.D. Pa. 2009); *In re Thomas*, 337 B.R. 879, 895 (Bankr. S.D. Tex. 2006), *aff'd*, 223 Fed. Appx. 310 (5th Cir.2007); *Cash-N-Advance v. Dansereau*, 64 Fed. Appx. 417 (5th Cir. 2003); *Knox v. Sunstar Acceptance Corp. (In re Knox)*, 237 B.R. 687, 699 (Bankr. N.D. Ill. 1999).

[16]  *Id.* (emphasis added, internal quotations and citations omitted).

4

7. Nor is this duty to investigate delegable—not even to the signing attorney's associate, and certainly not to a claim-aggregation shop churning out claims by the thousand. In *Obasi*, the signing attorney relied on a litigation support firm to "prepare[] proofs of claim, which were then submitted to the firm for review by an attorney at or near the time of filing."[17] The associate, working "under the general supervision of" the signing attorney, would review the proofs of claim using an internal checklist and file them using the singing attorney's electronic signature.[18] The court "found that the conduct [at issue] runs afoul of Bankruptcy Rule 9011"[19] because "[t]he person signing, filing, submitting, or advocating a document has a ***nondelegable*** responsibility to the court" and "is ***personally*** responsible for reviewing the document."[20] As the Third Circuit has explained, this duty "requires more than a rubber-stamping of the results of an automated process by a person who happens to be a lawyer."[21]

8. ***Fourth***, the Delaware Court has held that an attorney who signs a claim "might be[come] … a fact witness" and "may be subject to a deposition."[22] Moreover, the Court cautioned that it is "ill-advised" for attorneys to sign POCs and explained that it would be "concern[ed]" if "a thousand claims [are] signed by a particular lawyer."[23] The Court's statements are consistent with *In re Rodriguez*,[24] where the court held that "signing a proof of claim is an assertion of personal knowledge of the facts alleged in the proof of claim," which subjects the attorney to "bec[oming] a fact witness as to the allegations contained in the proof of

---

[17] 2011 WL 6336153 at *2.

[18] *Id.*

[19] The only reason the court did not impose sanctions was that "no evidence has been presented that the UST has complied with the safe harbor provisions by serving a copy of its motion on [the attorney] and his firm before filing it with this Court." *Id.* at *9.

[20] *Obasi* 2011 WL 6336153, at *3, 4, 8; 655 F.3d 274, 284 (3d Cir. 2011) (internal quotations and citations omitted); *see also In re Taylor*, 407 B.R. 618, 647 (Bankr. E.D. Pa. 2009) ("[I]n signing and presenting a document without any knowledge of its factual basis . . . [lawyer] failed to discharge her duty."), *rev'd*, No. 09-CV-2479-JF, 2010 WL 624909 (E.D. Pa. Feb. 18, 2010), *aff'd in part, vacated in part, rev'd in part*, 655 F.3d 274 (3d Cir. 2011).

[21] 655 F.3d 274, 288 (3d Cir. 2011).

[22] Cocchiaro Decl., Ex. 18, (Del. Bankr. 20-10343, Oct. 14, 2020 Hr'g), at 183:19–22; 170:2–12.

[23] *Id.* at 190:12–17; 183:19–22; 170:2–12.

[24] No. 10-70606, 2013 WL 2450925 (Bankr. S.D. Tex. June 5, 2013).

5

claim."[25]  And, just as a fact witness cannot invoke the attorney-client privilege to block cross-examination, an attorney signing a proof of claim "results in waiver of otherwise applicable privileges."[26]  Other courts in similar contexts are in accord.  *See Swanson v. Trasino Park-Hudsons, LLC* (*In re Vission , Inc.*), No. 07-21957, 2008 WL 2230741, at *4 n.3 (Bankr. E.D. Wis. 2008) ("By signing the affidavit, counsel runs the risk of becoming a fact witness, and any future hope of asserting privilege may disappear."); *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 473-74, 2006 (6th Cir. 2006) ("[C]ounsel must have realized that it would be 'pushing the envelope' with respect to the attorney-client privilege to introduce an affidavit from an attorney . . . [C]ounsel for petitioners elected to interject [the attorney] into these proceedings and thereby waived the attorney-client privilege.  In so doing, the work product privilege was waived as well."); *In re Gawker Media LLC*, No. 16-11700 (SMB), 2017 WL 2804870, at *2, 4 (Bankr. S.D.N.Y. June 28, 2017) (Rule 2004 attorney discovery should not be denied "merely because it may touch on privileged matters," especially where attorney would be examined about factual matters); *Cf. Friction Div. Prod., Inc. v. E.I. Du Pont De Nemours & Co.*, 117 F.R.D. 535, 538 (D. Del. 1987) (factual representations "create[] the opening for [opposing party] to investigate the foundations for those representations").

## II    MR. VAN ARSDALE CANNOT INVOKE THE ATTORNEY-CLIENT PRIVILEGE OVER THE PURELY FACTUAL INFORMATION SOUGHT BY CENTURY

### A.    Mr. Van Arsdale fails to carry his burden to invoke the attorney-client privilege.

9.      The law is clear that underlying *facts* are not protected by the attorney-client privilege or the work-product doctrine.  These protections shield only confidential *communications*, not facts.[27]  As the Ninth Circuit stated in *Murdoch v. Castro*, "[b]ecause the

---

[25]  *Id.* at *3–4.

[26]  *Id.* at *4.

[27]  *See In re Grand Jury Proceedings*, 689 F.2d 1351, 1351 (11th Cir. 1982) (holding that a government subpoena requesting an attorney to produce documents that would reflect date, place and time of meetings with client are not encompassed within the privilege); *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) (work product doctrine does not extend to the underlying facts relevant to the litigation).

6

attorney-client privilege protects only a communication between an attorney and a client, not the facts that are communicated, a defendant would remain free to question the witness about the underlying facts."[28]  And despite broad generalities to the contrary, the "Federal Rules of Civil Procedure do not themselves exempt attorneys from being a source of discoverable facts."[29]

10.     As the "party asserting attorney-client privilege," Mr. Van Arsdale "has the burden of establishing the existence of an attorney-client relationship *and* the privileged nature of the communication."[30]  He fails to carry his burden.  Mr. Van Arsdale declined to respond to the requests, and merely asserts—in conclusory fashion—that "the subpoenas seek information that is protected by the attorney-client privilege.[31]  But "[t]he party who withholds discovery materials based on a privilege must provide sufficient information to enable the other party to evaluate the applicability of the privilege or other protection."[32]  Asserting "a 'blanket objection' to each document on the ground of attorney-client privilege with no further description is ***clearly insufficient*.**"[33]  Moreover, "[f]ailure to provide sufficient information may constitute a waiver of

---

[28]   609 F.3d 983, 995 (9th Cir. 2010); *see also Mitchell Eng'g v. City & County of San Francisco*, 2010 U.S. Dist. LEXIS 53958, at *8 (N.D. Cal. May 6, 2010) ("the facts [deponent] learned through his investigations are not protected by the work product privilege"); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 249 (D. Kan. 1995) ("When a party employs counsel to represent it in a case where an attorney has played a role in the underlying facts, both the attorney and the party have every reason to expect that the attorney's deposition may be requested.").

[29]   *United Phosphorus, Ltd.*, 164 F.R.D. 245, 247 (D. Kan. 1995); *see also Sorenson v. Riffo*, 2008 WL 2465454, at *5 (D. Utah Jun. 16, 2008) ("Attorneys are not immune from depositions when they possess discoverable information that is relevant to the case.").

[30]   *U.S. v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010); *accord In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012); *accord U.S. v. Furst*, 886 F.2d 558, 576 (3d Cir. 1989); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 352 F. Supp. 3d 207, 213–14 (E.D.N.Y. 2019) (same); *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 153 (D.D.C. 2012).

[31]   *See* Cocchiaro Decl., Ex. 29, (Oct. 15, 2021 Letter from AVA).

[32]   *Everyday Discount, Inc. v. State Farm Gen. Ins. Co.*, 2018 WL 11346535, at *3 (C.D. Cal. Oct. 30, 2018) (citing Fed. R. Civ. P. 26(b)(5)).

[33]   *Id.* (internal citation omitted); *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (blanket privilege objection is improper); *Clarke v. Am. Com. Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) (blanket assertions of privilege are "extremely disfavored").

the privilege."[34] Courts routinely reject assertions of privilege where the party claiming privilege fails to "set forth" "evidence establishing that" the privilege attaches to any of the requested documents.[35] That is precisely the case here, where Mr. Van Arsdale failed to even respond to the individual requests, let alone "provide sufficient information" to assess each privilege claim in the context of a specific request.[36] Accordingly, the Court should reject his privilege claim on this basis alone.

11. Even if Mr. Van Arsdale's boilerplate objections were sufficient to assess his privilege claims (they are not), the claims would fail. "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed."[37] The Ninth Circuit applies an eight-part test to determine whether information is covered by the attorney-client privilege, and "[t]he party asserting the privilege bears the burden of proving each essential element:"[38]

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.[39]

Mr. Van Arsdale's privilege assertion fails before even considering these elements, because "there can be no assertion of attorney-client privilege if there is no attorney-client relationship,"[40] and most of Century's RFPs seek information likely pre-dating any formation of an attorney-client relationship. Consequently, Mr. Van Arsdale also cannot satisfy the fifth element—that the

---

[34] *Everyday Discount, Inc.*, 2018 WL 11346535, at *3 (internal citation omitted); *see also Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984) (attorney-client privilege waived when defendant did not make a timely and sufficient showing that the documents were protected by privilege).

[35] *See, e.g.*, *Everyday Discount, Inc.*, 2018 WL 11346535, at *3 (C.D. Cal. Oct. 30, 2018) (rejecting claim of privilege where "Defendant has set forth no evidence establishing that the subject Police Report involved counsel or that counsel was contacted for the purpose of providing legal advice about the Police Report documents to which they are objecting.").

[36] *Id.*; *see also West*, 748 F.2d 540 at 542 (attorney-client privilege waived when defendant did not make a timely and sufficient showing that the documents were protected by privilege).

[37] *Graf*, 610 F.3d at 1156 (quoting *U.S. v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)).

[38] *Id.* (quoting *U.S. v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009)).

[39] *U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (internal citation omitted).

[40] *Grassmueck v. Ogden Murphy Wallace, P.L.L.C.*, 213 F.R.D. 567, 571 (W.D. Wash. 2003).

8

communication in question come from *the client*, because it is unclear Mr. Van Arsdale or AIS even had clients at the time these documents were created. Even if they did, the requests do not relate to communications from the client. For example:

- **RFP 1** seeks documents and communications between the AIS firms concerning paragraph 2 of the Kosnoff 2019 statement, which details how lawyers for the AIS firms met in early 2019 to discuss a *potential* Boy Scouts bankruptcy.[41] Thus, this RFP seeks information about events and conversations that occurred *before* any attorney-client relationship with claimants in the BSA Bankruptcy existed, given that the Boy Scouts did not file their chapter 11 petition until February 18, 2020.

- **RFP 2** seeks communications among the AIS firms "concerning the television advertising for potential Boy Scouts of America and/or Delaware BSA LLC sexual abuse victims." Similar to RFP 1, this RFP seeks information pre-dating any attorney-client relationship.

- **RFP 3** seeks documents and communications concerning "the potential use of a Master Ballot," contrary to one of the "bedrock principles" upon which Mr. Kosnoff allegedly predicated his participation in AIS.[42] Accordingly, this request seeks information predating even the formation of AIS. And, given that claimants purportedly signed a retention agreement bearing AIS's letterhead, no attorney-client relationship had yet formed. Moreover, this request plainly does not implicate communications made *by a client.*

- **RFP 4** seeks communications "with (a) the Debtors, (b) Reciprocity Industries, or (c) any other third party vendor Concerning Abuse Claims." Given Mr. Kosnoff's description in his Rule 2019 Disclosure about Mr. Eisenberg suggesting a discussion about television advertising and mass tort litigation with Mr. Van Arsdale—co-owner and principal of Reciprocity—communications with Reciprocity likely occurred prior to formation of an attorney-client relationship. Moreover, Mr. Van Arsdale proffers no explanation why communications with the Debtors or other third parties would be privileged (and not waived)—an assertion on which he bears the burden.

- **RFP 6** seeks other documented communications between the AIS firms concerning "the events detailed in the 2019 Statement." The AIS 2019 Disclosure describes the original association of these three law firms in early 2019, and their initiation of a grassroots campaign to recruit abuse claimants.[43] Thus, this request seeks information

---

[41] Cocchiaro Decl., Ex. 11, (Del. Bankr. 20-10343, Aug. 9, 2021 Verified Statement of Abused in Scouting, D.I. 5923), ¶ 2.

[42] *See* Cocchiaro Decl., Ex. 1, (Del. Bankr. 20-10343, Aug. 9, 2021 Kosnoff 2019 Disclosure, D.I. 5924), ¶ 9.

[43] *See* Cocchiaro Decl., Ex. 11, ¶ 1-6,

9

likely pre-dating any attorney-client relationship, and certainly does not seek privileged communications "by a client."[44]

- **RFP 8** likewise seeks documents and communications "exchanged with Eisenberg Rothweiler Concerning these Chapter 11 Cases or the Abuse Claims asserted against the Debtors. Like the requests described above, this request seeks information likely pre-dating any attorney-client relationship, and certainly does not seek privileged communications "by the client."[45]

- **RFP 9** seeks communications between Mr. Kosnoff (and/or Kosnoff Law) and anyone representing the Debtors pre-petition and/or post-petition "Concerning the Abuse Claims asserted against the Debtors." Thus, this request on its face does not seek communications by the client, but rather between Mr. Kosnoff and attorneys for the Debtors.

- **RFP 10** similarly seeks communications between Mr. Kosnoff (and/or Kosnoff Law) and "any lawyer at Brown Rudnick"—the firm representing the Coalition—Concerning these Chapter 12 Cases. Thus, just like RFP 9, this request does not implicate communications by the clients.

12.    Further, even if an attorney-client relationship had formed, Mr. Van Arsdale has failed to show that any of the withheld documents are communications relating to the provision of legal advice to a client—the third element.[46] On the contrary, many of Century's requests seek factual information to which no privilege applies, and/or communications by individuals or entities *other* than the clients and not relating to the provision of legal advice to clients in the BSA Bankruptcy.[47] For example:

- **RFP 3** seeks communications between the AIS firms concerning the Master Ballots in the BSA Bankruptcy. It is unclear how this request could possibly encompass client communications relating to the provision of legal advice.

- **RFP 5** seeks communications between the AIS firms "Concerning the review and signing process." This request plainly does not seek attorney-client communications relating to the provision of legal advice, but rather seeks information concerning AIS's *processes*. Thus, the request does not implicate client communications *or* legal analysis of any kind.

---

[44] *U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (internal citation omitted).

[45] *Id.*

[46] *Id.*

[47] *See Matter of Fischel*, 557 F.2d 209, 212 (9th Cir. 1977) (explaining that "facts which an attorney receives from a third party … are not privileged.").

10

- **RFP 7** seeks documents and communications "exchanged with Omni Agent Solutions Concerning the use of Master Ballots for persons alleging Abuse Claims against the Debtors who are clients of [AIS or its member firms]." This request thus seeks information on *processes*, and in particular relates to the factual underpinnings of Mr. Kosnoff's statement that the AIS firms "would never accept the use of a master ballot."[48]

- **RFP 11** seeks documents "Concerning the sale, transfer, or granting of a lien in any portion of the recovery to be made for an Abuse Claim asserted against the Debtors." This request plainly seeks factual information—not communications—and the Ninth Circuit has repeatedly held that "fee arrangement[s]" are not "protected by the attorney-client privilege."[49] This request also does not relate to providing legal advice to a client.[50]

By their plain terms, all of these RFPs seek information about matters that do not implicate client communications and have nothing to do with legal advice—matters to which no privilege could apply.

**B.     Mr. Van Arsdale served primarily as owner and principal of Reciprocity, a for-profit claims-aggregation business, not a law firm.**

13.     Mr. Van Arsdale is the owner and principal of Reciprocity, a for-profit claims-aggregation business that provides marketing services and manages a call center. It is a for-profit business, ***not*** a law firm. Indeed, the evidence suggests that Mr. Van Arsdale's work as to AIS is focused on marketing services, given that at the bottom of the AIS homepage, a disclaimer explains that the entire Abused in Scouting website is an advertisement prepared by AVA Law Group.[51] And Mr. Van Arsdale's AVA Law Group lists just a single lawyer—Andrew Van Arsdale. Though this website states that "over the years, [Mr. Van Arsdale] has helped thousands

---

48     *See* Cocchiaro Decl., Ex. 1, ¶ 9.
49     *In re Michaelson*, 511 F.2d 882, 888 (9th Cir. 1975).
50     *See Admiral Ins. Co. v. U.S. Dist. Court for Dist. Of Arizona*, 881 F.2d 1486, 1493 (9th Cir. 1989) ("the privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney").
51     *See* Cocchiaro Decl., Ex. 15, (August 26, 2020 Declaration of Janine Panchok-Berry Decl., D.I. 1166) Ex. 4, (screenshot of AIS website from August 16, 2020) at 000011.

11

of people who have been injured," he only received a law degree in 2018.[52]  The only other listed

employee is a paralegal whose responsibilities include "head[ing] communication between AVA

Law Group and co-counsel firms."[53]  The disclaimer goes on to disclose that "[s]ervices may be

performed by affiliated law firms of AVA Law Group, Inc. who will be jointly responsible for

your case."[54]  The address listed on the AVA Law Group website appears to be little more than a

mail drop, where solo practitioners and small partnerships share a storefront office space.[55]

      14.    Mr. Van Arsdale is separately listed as an Owner and Operations Director at

Reciprocity Industries, a company that specializes in marketing tort claims.[56]  Mr. Van Arsdale's

bio for that company explains that his background is in advertising and intake for plaintiffs' law

firms, where he worked for the last decade.[57]  Reciprocity focuses on online and television

advertising and arranges call-center services.[58]  Simply having a law degree while acting in a

business capacity does not mean that Mr. Van Arsdale can invoke the attorney-client privilege

across all issues.[59]

---

[52]  *Id.*, Ex. 6.

[53]  *Id.*

[54]  *Id.*

[55]  *Id.*, Ex. 7.

[56]  *Id.*, Ex. 8.

[57]  *Id.*

[58]  *Id.*

[59]  *See, e.g.*, *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, No. 18CV4437JGKBCM, 2020 WL 757840, at *1 (S.D.N.Y. Feb. 14, 2020) (holding that no privilege applied to law school graduates acting in non-legal capacity); *Kleeberg v. Eber*, 2019 WL 2085412, at *6 (S.D.N.Y. May 13, 2019) (stating that where an individual may provide both legal and business advice, "the court must ascertain which hat the attorney was wearing during the allegedly privileged communication").

### C. Mr. Van Arsdale's status as an attorney does not *per se* exempt him from testifying in a case.

#### 1. Attorneys routinely sit for depositions as fact witnesses, including Mr. Van Arsdale's co-counsel, Timothy Kosnoff.

15.     While Mr. Van Arsdale also asserted blanket privilege objections to the taking of his deposition, "even an attorney for a party to the suit[] is subject to being deposed."[60]  That even includes the closer call case involving a deposition of *opposing* counsel.[61]  Indeed Mr. Van Arsdale's co-counsel, Timothy Kosnoff, sat for a deposition in connection with the Boy Scouts Bankruptcy on Monday (and routinely referred the questioning parties to "ask Andrew" the answers to certain questions), plainly undercutting Mr. Van Arsdale's argument that he is immune from doing the same.[62]

16.     Ninth Circuit courts consider various factors when determining whether the deposition of a party's lawyer can take place, including: (1) the need to depose the lawyer; (2) the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation; (3) the risk of encountering privilege and work-product issues; and (4) the

---

[60] *SEC v. Art Intellect, Inc.*, 2012 WL 776244, at *3 (D. Utah Mar. 7, 2012) (internal quotation marks and citation omitted).

[61] *See, e.g., Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 728-29, 733 (8th Cir. 2002) (affirming district court's denial of motion to quash defendants' subpoena of plaintiffs' counsel); *United Phosphorus*, 164 F.R.D. at 250 (denying defendants' motion to limit the scope of the deposition of counsel representing them in the case).

[62] *See* Cocchiaro Decl. Ex. 37, (Del. Bankr. 20-10343, Century's Second Amended Deposition Notice of Timothy Kosnoff, D.I. 7314); Cocchiaro Decl. Ex. 38, (Del. Bankr. 20-10343, The Zalkin Law Firm, P.C. and Pfau Cochran Vertetis Amala PLLC's Amended Deposition Notice of Timothy Kosnoff, D.I. 7295); Cocchiaro Decl. Ex. 39, (Del. Bankr. 20-10343, Nov. 17, 2021 H'ring Tr.), at 52:17-25 (Mr. Schiavoni: "Your Honor, I think we have an agreement with Mr. Kosnoff's counsel and others about him appearing for deposition. I'm glad to say, we had noticed it for Friday, I spoke to Mr. Wilks this morning and Mr. Patterson, we're going to just move it to Monday by agreement between the three of us. And there's some document issues that we thought that need to be resolved, I think we can do that offline without the intervention of the Court with that extra day of moving it to Monday.").

13

extent of discovery already conducted.[63]  According to the court in *Younger Mfg. Co. v. Kaenon, Inc.*,"[u]nder this approach, the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered."[64]

17.    In *Younger*, counsel for defendant was a "percipient witness or fact witness" to key communications between defendant and a third party.[65]  In denying the defendant's motion for protective order, the court noted that "because the third party that possessed the most knowledge about the relevant information was a Japanese company, "[defendant's counsel's] deposition is the only way plaintiff can obtain this information in time to defend against [defendant's] motion for summary judgment."[66]

18.    The same is true here.  As co-counsel to Mr. Kosnoff and owner and principal of Reciprocity, Mr. Van Arsdale clearly possesses the most knowledge about the makeup of AIS and the role Reciprocity played in the claims explosion which occurred in this case post-petition.

---

[63]  *Younger Mfg. Co. v. Kaenon, Inc.*, 247 F.R.D. 586, 588 (C.D. Cal. 2007).  While courts sometimes apply a heightened standard to depositions of counsel, those involve depositions of trial counsel representing a party to the litigation concerning the conduct of ***that action***.  *See Shelton v. Amer. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986); *Chase Manhattan Bank, N.A. v. T & NPLC*, 156 F.R.D. 82, 84 (S.D.N.Y. 1994) (distinguishing between counsel in litigation and "non-trial counsel"); *Nakash v. United States Dept. of Justice*, 128 F.R.D. 32, 34–35 (S.D.N.Y. 1989) (refusing to quash deposition subpoena because attorneys were fact witnesses and were not "opposing counsel"); *Bogan v. Northwestern Mutual Life Ins. Co.*, 152 F.R.D. 9, 14–15 (S.D.N.Y. 1993) (stating S*helton* "does not bar such depositions where attorneys take part in significant relevant pre-events and the attorney-client privilege does not apply to the testimony sought"); *Sadowski v. Gudmundsson*, 206 F.R.D. 25, 27 (D.D.C. 2002) (holding trial counsel may be deposed, and stating "[w]here an attorney for a party has information concerning the underlying events supporting the suit, the attorney cannot shield relevant facts merely because he was an attorney for that party"); *Amicus Communications, L.P. v. Hewlett-Packard Co.*, No. 99 Civ. 0284, 1999 WL 33117227, at *2 (D.D.C. Dec. 3, 1999) (same); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 249 (D. Kan. 1995) (same).

[64]  *Id.*

[65]  *Id.*

[66]  *Id.*.

14

Indeed, the only other way to obtain this information (albeit imperfectly) would be to depose every AIS claimant and attorney who submitted POCs with the assistance of Reciprocity's services. Not only would this be highly inefficient, but it might also require depositions of trial counsel, unlike Mr. Van Arsdale.

**2.  Courts require attorneys who engage in the sort of fee-sharing arrangements present here to sit fact-based depositions.**

19.     In *Baron & Budd*, the district affirmed a bankruptcy court decision overruling a very similar challenge to discovery of a loose consortium of plaintiffs' attorneys in connection with a mass-tort bankruptcy. The court there held that "fee sharing, co–counsel and referral relationships (and the potential conflicts of interest that may arise therefrom) are indeed pertinent facts and circumstances in connection with the employment of the entity."[67] In holding that it was improper to shield the lawyers from discovery, the court cited deposition testimony from a lead lawyer at Motley Rice (a firm that is now a member of the Coalition that Mr. Van Arsdale founded) in explaining the potential that inter-law firm arrangements "suggest the opportunity for abuse of fee-sharing relationships" that were "inextricable from the overall fairness of the reorganization plan."[68] These considerations are especially pressing here in light of an email from Mr. Kosnoff admitting that AIS intended to manipulate the bankruptcy process,[69] such that "[n]othing happens until AIS says so."[70]

20.     Similarly, in *Baron & Budd*, the lawyers resisting disclosure who purported "to 'speak for' over 75 percent of all asbestos claimants against [debtor], may not in fact 'represent' individual claimants in the traditional sense of an attorney-client relationship, but rather, they

---

[67]  *Baron & Budd, P.C. v. Unsecured Asbestos Claimants*, 321 B.R. 147, 167 (D.N.J. 2005).
[68]  *Id.* at 160, n.3.
[69]  Cocchiaro Decl., Ex. 7, (Del. Bankr. 20-10343, D.I. 1285-1).
[70]  *Id.*

represent other attorneys who, in turn, represent individual claimants."[71]  That claim of speaking for but not actually representing the bulk of the underlying tort claimants is strikingly close to the facts here.  And that is what raised eyebrows for both the bankruptcy and district courts.

21.     The *Baron & Budd* court also unequivocally rejected the same overreaching privilege arguments that Mr. Van Arsdale raises:  "Not only are there strong policy and statutory reasons why the fee arrangements between attorneys practicing before the bankruptcy courts cannot be privileged, there is ample evidence in this particular case, that suggests ***these facts are relevant, and indeed, critical***."[72]

**III     EVEN IF THE ATTORNEY-CLIENT PRIVILEGE DID APPLY, MR. VAN ARSDALE EITHER WAIVED THE PRIVILEGE OR FAILED TO PROPERLY INVOKE IT.**

**A.     Mr. Van Arsdale waived privilege when AIS publicly disputed that Mr. Kosnoff speaks for their claimants.**

22.     The Ninth Circuit is clear that "[w]here a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived."[73] Under the doctrine of implied waiver, the Ninth Circuit has held that a party waives all attorney-client and work-product privileges if: (1) the assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.[74]

---

[71]  321 B.R. at 160.
[72]  321 B.R. at 169 (emphasis added).
[73]  *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992).
[74]  *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash. 1975); *see Home Indem. Co. v. Lane Powell Moss and Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) (adopting the Hearn test for the Ninth Circuit); *see also Rambus Inc. v. Samsung Electronics Co.*, 2007 WL 3444376, at *3 (N.D. Cal. Nov. 13, 2007) (applying the Hearn test in determining whether defendant waived privilege through its counterclaim pleadings).

16

23.     In *Rambus Inc. v. Samsung Electronics Co.*, the court applied the doctrine of implied waiver in a similar case.[75] After Rambus served document requests relating to Samsung's counterclaims, Samsung withheld hundreds of documents that purportedly contained "mental impressions regarding litigation."[76]Applying the doctrine of implied waiver, the Special Master found that Samsung placed at issue certain allegations, and by doing so, had waived its privileges "as to the facts, circumstances and documents in Samsung's possession, custody or control that discuss, refer or relate[d] to [those allegations]."[77]  Other courts are in accord.[78]

24.     That same rationale applies here.  Mr. Van Arsdale's AIS disputes that Mr. Kosnoff speaks for the claimants that AIS represents.  In doing so, they, like Samsung, have placed at issue facts regarding who controls those claims.  And like Rambus, Century would be denied evidence critical to their defense if Mr. Van Arsdale were permitted to hide behind his blanket privilege assertions.

**B.     Blanket claims of privilege are ineffective, especially where Century seeks purely factual information.**

25.     The basic position of Mr. Van Arsdale appears to be that his status as an attorney renders him untouchable in a deposition.  While the party seeking to dodge a subpoena on the

---

[75]  2007 WL 3444376, at *3-5.
[76]  *Id*. at *1.
[77]  *Id*. at *2.
[78]  *See also Sommer v. U.S.*, 2012 WL 28337, at *4 (S.D. Cal. Jan. 5, 2012) (allegations regarding pathologist's findings waived any privilege between plaintiffs' counsel and pathologist); *Walker v. County of Contra Costa*, 227 F.R.D. 529, 535 (N.D. Cal. 2005) (employer waived privilege to pre-litigation investigation by asserting the adequacy of its investigation as an affirmative defense).

17

grounds of attorney-client privilege bears the burden to oppose,[79] it is black-letter law that blanket claims of privilege are ineffective.[80]

26.     In any event, resolving privilege issues at this juncture is impossible. The issue now before this Court is whether the depositions can go forward. If Mr. Van Arsdale has specific privilege objections, the proper thing for him to do is to make them at his deposition, at which time a court can resolve them.[81] Courts disfavor preemptively shutting down depositions because of hypothetical privilege concerns and instead address privilege on a question-by-question basis.[82] In short, even if Mr. Van Arsdale's privilege concerns should prove to have limited merit, that does not justify blocking the deposition in its entirety.

---

[79] *In re Grand Jury Investigation*, 974 F.2d 1068, 1070-1071 (9th Cir. 1992) ("The party asserting the attorney-client privilege has the burden of proving that the privilege applies to a given set of documents or communications."); *FDIC v. Garner*, 126 F.3d 1138, 1144 (9th Cir. 1997) ("Once the [party issuing the subpoena] has established relevancy, the party opposing the subpoena bears the burden of demonstrating that the subpoena is unreasonable.")

[80] *See United States v. Ruehle*, 583 F.3d 600, 609 (9th Cir. 2009).

[81] *See Alexander*, 192 F.R.D. at 19 (holding that plaintiffs did not meet their burden of showing that all of the information sought is protected and if the deposing party does ask questions that could elicit the mental impressions of the attorneys, then the deposed party is "entitled to claim the privilege and come back to this court to make a proper showing of why the information sought is protected").

[82] *See, e.g., Nat'l Life Ins. Co. v. Hartford Acc. & Indem. Co.*, 615 F.2d 595, 598 (3d Cir. 1980) (privilege may only be asserted question-by-question, and blanket privilege may not be asserted before hearing those questions); *Robocast, Inc. v. Microsoft Corp.*, 2013 WL 1498666, **1–2 (D. Del. 2013) (rejecting counsel's blanket assertion of privilege and instructing that privilege objections could be made on a question-by-question bases at the deposition); *In re Commonwealth Financial Corp.*, 408 F.2d 640 (3d Cir. 1969) (affirming district court in holding that a witness in a bankruptcy proceeding could not assert a blanket fifth amendment privilege prior to hearing the questions); *In re Grand Jury Matters*, 751 F.2d 13, 17 (1st Cir. 1984) ("It is well established that blanket assertions of privilege . . . are extremely disfavored, and that persons claiming a privilege must establish the elements of privilege as to each record sought and each question asked so that . . . the court can rule with specificity.") (internal citations and quotations omitted).

18

### C. Mr. Van Arsdale failed to provide a privilege log.

27.     As the party asserting privilege, Mr. Van Arsdale bears the burden of "mak[ing] a *prima facie* showing that the privilege protects the information the party intends to withhold."[83] One method of doing so is to provide a privilege log, which is "a means by which a party [can] protect its confidential communications without frustrating the [propounding party]'s legitimate inquiries."[84]  That log must "describe the nature of the withheld documents, communications, or tangible things in a manner that" "enable[s] the parties to assess the claim."[85]  The Ninth Circuit has found that privilege logs identifying the following information can be sufficient to make out a *prima facie* privilege case: "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated."[86]  But Mr. Van Arsdale mentions nothing at all about a privilege log and falls well short of carrying his burden.

### IV     THE WORK PRODUCT DOCTRINE DOES NOT APPLY HERE.

28.     As with the attorney-client privilege, Mr. Van Arsdale makes only a bare assertion that the work product doctrine applies, offering no clue about which requests target documents that are protected work product, nor why such protection as not waived. But "the burden of demonstrating that a document is protected as work-product rests with the party asserting" the privilege.[87]  Mr. Van Arsdale has come nowhere close to carrying this burden.  But, putting that

---

[83]   *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992).

[84]   *Dole v. Milonas*, 889 F.2d 885, 888 n.3, 890 (9th Cir. 1989).

[85]   Fed. R. Civ. P. 45(e)(2); Fed. R. Bankr. Proc. 9016; *see also Wal-Mart Stores, Inc. v. City of Pontiac Gen. Emps.' Ret. Sys.,* 314 F.R.D. 138, 141 (D Del. 2016) (Party "failed to assert a valid claim of privilege with respect to the documents requested" by simply claiming that documents are privileged).

[86]   *Natural-Immunogenics Corp. v. Newport Trial Grp.*, 2018 WL 6137633, at *11 (C.D. Cal. Apr. 23, 2018) (quoting *Dole v. Milonas*, 889 F.2d 885, 888 n.3, 890 (9th Cir. 1989)).

[87]   *Conoco Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982) (holding that document was not privileged where the proponent "failed to establish that the document was prepared by or at the direction of an attorney," or "that it was prepared in anticipation of litigation").

failure aside, many of the RFPs seek information having nothing to do with providing legal advice or Mr. Van Arsdale's pre-litigation strategies. ***RFPs 1, 2, 6, and 8*** seek information related to the formation of AIS, and its efforts to advertise to and ultimately retain clients in the BSA Bankruptcy. ***RFPs 4, 7, 9, and 10*** seek information about communications with attorneys for the Debtors, Coalition, or other third parties in the BSA Bankruptcy, for which any protection was waived. ***RFP 5*** seek information on the *processes* utilized by AIS and its member firms in processing and submitting POCs. ***RFPs 3 and 7*** seeks information about AIS's position on master ballots, which relates to the organization and formation of AIS, given Mr. Kosnoff's description of its "bedrock principles." And finally, ***RFP 11*** seeks information concerning any financial agreements to share awards won in connection with the BSA Bankruptcy, which on its face does not constitute "the mental processes of the attorney" in preparation for litigation.[88]

## V       THE SUBPOENAS ARE NOT UNDULY BURDENSOME.

29.     Mr. Van Arsdale asserts that the Subpoenas are too burdensome for a non-party, but this argument conveniently ignores that he submitted thousands of POCs and jointly represents 15,000 claimants. What's more, Mr. Van Arsdale owns, operates, and closely supervises Reciprocity, which the evidence shows worked with over a dozen law firms in submitting POCs in the BSA Bankruptcy.[89] Mr. Van Arsdale will collect his share of a 40% contingency fee from some 15,000 claims under a plan of reorganization that he hopes the Delaware Court will approve. He and Reciprocity should be cooperating with—rather than obstructing—discovery.

30.     To determine whether a subpoena imposes an undue burden, courts "weigh the burden to the subpoenaed party against the value of the information to the serving party,"

---

[88]  *U.S. v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020).
[89]  Cocchiaro Decl., Ex. 1, at 6.

considering "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."[90] As explained, the discovery sought is critically relevant to a core issue in the BSA Bankruptcy: voting. The Delaware Court has agreed, stating that "the evidence raises concerns about how some of these claims were generated," and that discovery "could be relevant to voting."[91] Mr. Van Arsdale does not seem to contest the relevance of the discovery, but complains of the breadth of the requests.[92] But Century merely seeks documents concerning Mr. Van Arsdale and AIS's efforts in connection with the BSA Bankruptcy, *i.e.*, work relating to a single project spanning less than two years. And Mr. Van Arsdale proffers no evidence for his claim that "it would take several months" to comply, and that compliance would prove expensive, nor any authority that the efforts ostensibly required are *per se* burdensome.[93] And as to a potential remote deposition, only a simple internet connection is needed.[94]

---

[90] *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005); *accord In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 252 (E.D. Pa. 2014).

[91] Cocchiaro Decl., Ex. 2, at 46:11–21.

[92] *See* Cocchiaro Decl., Ex. 29, at 2.

[93] *Id.*

[94] *See*, *e.g.*, *Swenson v. Geico Cas. Co.*, 336 F.R.D. 206, 210 (D. Nev. 2020) (explaining that "attorneys and litigants are adapting to new ways to practice law, including preparing for an conducting depositions remotely," and "courts within the Ninth Circuit routinely highlight remote depositions as an effective and appropriate means to keep cases moving forward"); *Lopez v. CIT Bank, N.A.*, 2015 WL 10374104, at *2 (N.D. Cal. Dec. 18, 2015) (explaining that remote proceedings are not "burdensome," because "[m]odem videoconference software permits participants to quickly and conveniently share documents and images with each other"); *Chase-Morris v. Tubby*, No. 65927/2019, 2020 WL 4516920, at *4 (N.Y. Sup. Ct. Aug. 3, 2020) ("New York's trial level courts are in accord . . . [and] conclude that virtual [proceedings] do not cause undue hardship in light of the technology currently available and the serious health risks posed by the COVID-19 virus.").

## CONCLUSION

31.     For the foregoing reasons, the Court should order Mr. Van Arsdale to comply with Century's Subpoenas.

Dated: November 30, 2021

Respectfully Submitted,
By: */s/ Karen Rinehart*

TANCRED SCHIAVONI
   (*pro hac vice application to be filed*)
STEPHEN H. WARREN (S.B. #136895)
KAREN RINEHART (S.B. #185996)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: tschiavoni@omm.com
swarren@omm.com
krinehart@omm.com

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*

# LOCAL RULE CERTIFICATION

Pursuant to Local Civil Rule 5.3, the above and foregoing Memorandum of Law was served upon counsel for Andrew Van Arsdale, by email and via first-class mail to:

Paul Starita
The Gomez Firm
655 W Broadway, Ste 1700,
San Diego, CA 92101
pstarita@thegomezfirm.com

Dated: November 30, 2021

Respectfully Submitted,

By: _Tancred Schiavoni_

TANCRED SCHIAVONI
   (*pro hac vice application to be filed*)
STEPHEN H. WARREN (S.B. #136895) KAREN RINEHART (S.B. #185996) O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: tschiavoni@omm.com
         swarren@omm.com
         krinehart@omm.com

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*

OMM_US:80338762.4

23